**CASE NO. 22-30033**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

DYNAMIC INDUSTRIES, INCORPORATED; DYNAMIC INDUSTRIES INTERNATIONAL, L.L.C.; DYNAMIC INDUSTRIES SAUDI ARABIA, LIMITED,

Plaintiffs - Appellants

v.

WALAA COOPERATIVE INSURANCE COMPANY, improperly named defendant METLIFE-AMERICAN INTERNATIONAL GROUP – ARAB NATIONAL BANK COOPERATIVE INSURANCE COMPANY; MARSH & MCLENNAN COMPANIES, INCORPORATED doing business as MARSH, INCORPORATED; MARSH USA, INCORPORATED, doing business as MARSH USA RISK SERVICES,

Defendants - Appellees

---

On Appeal from the
United States District Court for the Eastern District of Louisiana
Civil Action No. 21-cv-748
Honorable Ivan L.R. Lemelle, Presiding

---

**REPLY BRIEF ON BEHALF OF APPELLANTS RESPONDING TO ORIGINAL BRIEF ON BEHALF OF MARSH & MCLENNAN COMPANIES, INC. AND MARSH USA INC.**

---

L. ETIENNE BALART (La. Bar #24951)
TAYLOR K. WIMBERLY (La. Bar #38942)
JONES WALKER LLP
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: 504-582-8584
Facsimile: 504-589-8584
Email: ebalart@joneswalker.com
twimberly@joneswalker.com
ATTORNEYS FOR APPELLANTS

# TABLE OF CONTENTS


| | Page |
|---|---|
| ARGUMENT IN REPLY | 1 |
| I. "CONSTRUCTIVE NOTICE" REQUIRES A COGNIZABLE INJURY | 1 |
| II. THE MARSH ENTITIES ARGUMENT CONCERNING MARSH KSA AND PERSONAL JURISDICTION OVER MMC | 6 |
| III. PLAINTIFFS HAVE CLEARLY STATED A CAUSE OF ACTION FOR MARSH NEGLIGENCE | 8 |
| IV. THE MARSH ENTITIES RULE 19 INDISPENSABLE PARTY ARGUMENT | 10 |
| CONCLUSION | 11 |
| CERTIFICATE OF SERVICE AND COMPLIANCE WITH ECF FILING STANDARDS | 12 |
| CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1) | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Dickson Marine, Inc. v. Panalpina, Inc.*,
179 F.3d 331 (5th Cir. 1999) .......... 7

*Rajet Aeroservicios S.A. de C.V. v. Cervantes*,
801 F. App'x. 239 (5th Cir. 2020) .......... 10

*Santiago v. Honeywell Int'l, Inc.*,
768 F. App'x. 1000 (11th Cir. 2019) .......... 10

## State Cases

*C's Disc. Pharm. v. Pac. Ins. Co.*,
09-217 (La. Ct. App. 2010); 31 So. 3d 110 .......... 2

*Campo v. Correa*,
2001-2707 (La. 06/21/02), 828 So. 2d 502 .......... 2

*Karam v. St. Paul Fire & Marine Ins. Co.*,
281 So .2d 728, 730 (La. 1973) .......... 9

## State Statutes

La. R.S. 9:5606 .......... 1, 6

## Rules

Rule 12(b)(1) .......... 8

Rule 12(b)(7) .......... 10

Rule 19 .......... 10, 11

Appellants-Plaintiffs Dynamic Industries, Inc. ("DI"), Dynamic Industries International, LLC ("DII") and Dynamic Industries Saudi Arabia Ltd. ("DISA") submit this reply in response to the Original Brief of Defendants-Appellees Marsh & McLennan Company Inc. ("MMC") and Marsh USA, Inc. ("Marsh") (sometimes, collectively, the "Marsh Entities").

## ARGUMENT IN REPLY

The brief in opposition submitted by MMC and Marsh argues that the District Court's ruling was fundamentally sound based on the application of "constructive notice" and the prescriptive period in La. R.S. 9:5606. This argument is wrong on the specific facts involved, and Louisiana's application of the constructive notice doctrine. With respect to the arguments for affirming the District Court's Judgment on alternate grounds, this Court should not entertain that argument in the first instance and remand the case to the District Court for further proceedings.

### I. "Constructive Notice" Requires a Cognizable Injury

Both the District Court and the Marsh Entities have fundamentally misapplied the concept of constructive notice by ignoring the fact that on November 14, 2019, the date the Policy was issued, no coverage decision had been made, and thus no injury had occurred. In fact, the undisputed facts surrounding the issuance of the Policy in November of 2019 *after the notice of loss for this*

*casualty has been submitted* actually indicate to the contrary – that the Policy was responding to the loss in question. The argument presented by the Marsh Entities glosses over the blatant failures of the Marsh Entities to timely procure the Policy in 2017 (when Marsh was paid the premium) and the fact that the actual procurement of the insurance in 2019 was likely adversely affected by the fact that a notice of loss had been submitted.

Simply, prescription in Louisiana "commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the ***victim of a tort***." *C's Disc. Pharm. v. Pac. Ins. Co.*, 09-217 (La. Ct. App. 2010); 31 So. 3d 110 (emphasis added) (quoting *Roadhouse Bar-B-Que v. Certain Underwriters at Lloyds*, 2004-1697 (La. App. 3rd Cir. 2005); 909 So. 2d 619, 623). "Constructive notice" is "whatever notice is enough to excite attention and put the ***injured party*** on guard and call for inquiry." *Id.* (emphasis added). Thus, without an injury, the doctrine of constructive notice is inapplicable. The argument by the Marsh Entities and the District Court's use of constructive notice are deficient on the agreed definition of "constructive notice:" knowledge of facts sufficient to excite the attention and put the injured party on guard and call for inquiry.[1] On November 14, 2019, no Plaintiff had been injured and, therefore.

[1] Appellees' Brief at p. 16; ROA.3577, 3580; *Campo v. Correa*, 2001-2707 (La. 06/21/02), 828 So. 2d 502, 510.

there was nothing upon which to excite the attention or call for further inquiry. It is as simple as that. The Policy had been issued after the notice of loss, no indication of declination of coverage had been made, and every indication was that the Policy responded to the claim.[2] Why the Plaintiffs could have known, from reading a standard "other insurance" clause that coverage would be denied, is never explained.

In fact, throughout their brief, the Marsh Entities actually vividly illustrate this point. The Marsh Entities make a point to call out Plaintiffs for "mischaracterizing" the Policy in question, noting that it is a standard commercial general liability policy with standard, ordinary "other insurance" clauses.[3] Essentially, what the Marsh Entities are contending in their argument is that Plaintiffs were on constructive notice that a standard "other insurance" clause would be used to bar coverage for a Policy procured after a notice of loss was submitted and in contemplation of primary coverage, when the Marsh Entities and, presumably, Walaa, were plainly aware of the facts and circumstances of the loss and the involvement of "other insurance." What the Marsh Entities are contending as "constructive notice" through delivery of the Policy is a precept that they themselves even agree is preposterous – that any reasonable insured would read a

[2] ROA.2359-60.

[3] Appellees' Brief at pp. 9, 18 ("In fact, 'other insurance clauses' similar to this one are commonly found in comprehensive and commercial general liability policies.")

standard "other insurance" clause and think that it could be used to convert a primary general liability policy into a true excess policy and deny primary coverage.[4] In such a situation, i.e. where two "other insurance" clauses in general liability policies conflict, and based on the very law the Marsh Entities cite, coverage cannot be denied. Thus, while the Marsh Entities argue that, as of November 14, 2019, Plaintiffs were on "constructive notice" starting the one-year limitation period, they themselves admit that the *only interpretation* of a standard "other insurance" clause is as Plaintiffs have alleged, i.e. that the existence of conflicting "other insurance" clauses does not render the general liability policy into a true excess policy. The undisputed fact is that Plaintiffs were not aware of *any facts* indicating that coverage would be denied on this basis until coverage under the Policy was denied via an email dated September 28, 2020, some ten months after the Policy was "issued."[5] This is the first possible date on which Plaintiffs' attention should have been excited that they were victims of a tort, and suit was filed on April 13, 2021, well within the one-year prescriptive period.

---

[4] Appellees' Brief at p. 9 ("…the policy is not written as an excess policy—it is a primary policy with an "other insurance" clause that ranks coverage. Plaintiffs continuously mischaracterize it as an excess policy based on the insurer's position that the "other insurance" provision applies."). The Marsh Entities go on to contract the difference between "other insurance" clauses and true excess liability policies. Appellees' Brief at pp. 18-20.

[5] ROA.2524-25.

The use of "constructive notice" to support a finding that on November 14, 2019 Plaintiffs had a cause of action in negligence against the Marsh Entities, without having even a hint of injury, is both wrong on the law and the facts. The very essence of Plaintiffs' claims – in the alternative – against the Marsh Entities is the unilateral misreading of the Policy by Walaa, and using a standard "other insurance" clause to modify the Policy into a true excess policy. The Marsh Entities concede that this is what Walaa is doing, and that such a construction is not supported by the Policy terms. That is why Plaintiffs' claims against the Marsh Entities are in the alternative, because only if the finder of fact agrees that the Policy is a true excess policy, then the Marsh Entities have failed to procure the insurance coverage requested by the Plaintiffs – *i.e.*, primary coverage.

Accordingly, the proper inquiry, as set forth in more detail in Plaintiffs' Original Brief, is when, for purposes of constructive notice, should the Plaintiffs have been put on notice of a problem with the Policy. Compounding the unique circumstances here, as of November 14, 2019, Plaintiffs were not aware that any failure to procure the Policy until *after the loss had been submitted* may have led to Walaa's decision to deny coverage. But, the fact that the Marsh Entities failed to timely procure the Policy in 2017, and only bound the Policy in November of 2019, may have played a role in the coverage position taken by Walaa. It was not until the insurer first denied coverage – in September of 2020 – that constructive

notice could have started. Suit was filed within one year of this date, and within three years of the actual issuance of the Policy, satisfying both the prescriptive and peremptive periods of La. R.S. 9:5606.

## II. The Marsh Entities Argument Concerning Marsh KSA and Personal Jurisdiction Over MMC

Interwoven throughout the brief of Appellees is an argument that Plaintiffs' sole claims rest against Marsh KSA,[6] not the Marsh Entities, and that because Marsh KSA "brokered" the procurement of the Policy. Throughout their brief, the Marsh Entities continue to state that Marsh KSA – not the Marsh Entities – brokered the Policy in question. This contention is not supported by the facts as plead, and those facts cannot be disregarded for purposes of reviewing the District Court's ruling granting the motions filed by the Marsh Entities.[7]

The Marsh Entities make this argument as a means to avoid their alleged involvement in the failure to procure the necessary insurance. As plead by the Plaintiffs, they retained Marsh, not Marsh KSA, to obtain the necessary insurance.[8] Only through the existence of the Marsh network – all owned and controlled by MMC – did Marsh KSA become involved.[9] But at no time in 2017 did Plaintiffs

---

[6] Marsh Saudi Arabia Insurance and Reinsurance Brokers LLC.

[7] Appellants' Brief at p. 11.

[8] ROA.363. Again, the BLA was executed after the fact and after the Policy was procured. The involvement of Marsh KSA was undertaken by Marsh, not Plaintiffs. ROA. 2615.

[9] ROA.2615.

hire Marsh KSA to obtain insurance, and the involvement of Marsh KSA was only due to the common ownership of Marsh and Marsh KSA by MMC.

The parties essentially agree on the legal requirements for establishing personal jurisdiction over MMC, cited by the Marsh Entities at page 31 of their brief. Notably, and as more fully briefed by Appellants in their Original Brief, the allegations in the pleadings create a facially plausible claim of alter ego jurisdiction because under the specific facts of this case, Plaintiffs have illustrated something other than the subsidiary's "mere presence within the bosom of the corporate family." *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). Here, Marsh and Marsh KSA, as sister companies within the corporate MMC umbrella, interacted seamlessly (albeit without actually timely binding the Policy) to meet the request Plaintiffs made to Marsh alone for insurance coverage. It should be remembered that Plaintiffs hired Marsh and all arrangements for the procurement of insurance for this project were handled through New Orleans. That Marsh may have relied upon Marsh KSA (or other Marsh companies) to assist in the procurement of the Policy allows for the attributions of Marsh's personal jurisdiction contacts to MMC. At a minimum, the District Court should have allowed jurisdictional discovery on that point.

And while the Marsh Entities agree with the relevant factors for consideration, they do not analyze the facts as presented to the District Court.[10] Of the five factors pertinent, the evidence presented in the motions established that MMC owns 100% of the stock of both Marsh and Marsh KSA;[11] Marsh and MMC share common officers and directors;[12] MMC reports consolidated financial information;[13] and MMC uses its various agencies to provide worldwide or global insurance solutions, indicative of MMC's control over the general policies and daily activities of Marsh and Marsh KSA.[14] At the motion to dismiss stage, the allegations of the First Amended Complaint were sufficient to establish personal jurisdiction over MMC, or, at a minimum, allow for jurisdictional discovery. The District Court's granting of the Rule 12(b)(1) motion of MMC was in error.

## III. Plaintiffs Have Clearly Stated A Cause of Action for Marsh Negligence

Somewhat surprisingly, given that the failure to timely procure insurance in 2017 is admitted, the Marsh Entities argue that an alternative basis exists to affirm the District Court because Plaintiffs are alleged to have failed to adequately plead their negligence. The Marsh Entities argue that under these pleaded facts,

---

[10] Appellees' Brief at p. 32.

[11] ROA.389.

[12] ROA.389.

[13] ROA.2184.

[14] ROA.2170.

Plaintiffs have not stated a cause of action.[15] This argument borders on the frivolous, for the Marsh Entities failed in their most basic charge to timely obtain the Policy.

Facts which are not in dispute, as plead, are that the Marsh Entities were tasked with procuring the insurance necessary for this project in 2017. Significant fees and a premium for a policy were paid in **2017**.[16] A notice of loss for the damage complained of was submitted in the Fall of **2019**. At this point, Plaintiffs first learned that the insurance policy they were led to believe had been procured (and paid for), had actually never been issued.

Under Louisiana law, an insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So .2d 728, 730 (La. 1973). The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. *Id.* As summarized above, not only did the Marsh Entities fail to procure the insurance in 2017, they failed to tell

[15] Appellees' Brief at p. 25 *et seq.*

[16] ROA.2363, 2387-88.

Plaintiffs for almost two years that no policy had been bound. Simply, the Marsh Entities failed to advise Plaintiffs promptly of their failure to obtain the requested insurance. Clearly, these allegations state a valid cause of action.

## IV. The Marsh Entities Rule 19 Indispensable Party Argument

In recognition of the deficiencies in its arguments concerning constructive notice and personal jurisdiction, the Marsh Entities argue in the alternative that this Court should affirm the dismissal on alternative grounds. Because this issue was never fully briefed to the court below, and the Marsh Entities have not raised Rule 19 as a basis for dismissal, this Court should not affirm the lower court on these grounds. Rule 19 presents the standard by which a district court may decline to proceed for failure to join an indispensable party, and contains numerous factors that a district court must consider when dealing with a Rule 12(b)(7) motion brought under Rule 19. The Marsh Entities never brought such a motion and this Court should not entertain it in the first instance on appeal. *See, e.g.*, *Santiago v. Honeywell Int'l, Inc.*, 768 F. App'x. 1000, 1007 (11th Cir. 2019) ("Although the parties encourage this Court to make a final Rule 19 determination one way or the other on appeal, we prefer to remand the case to the district court to allow it to make a complete Rule 19 determination in the first instance."); *Rajet Aeroservicios S.A. de C.V. v. Cervantes*, 801 F. App'x. 239 (5th Cir. 2020) (citing *Santiago* and observing "[t]his is particularly true given that the court ruled on the issue *sua*

*sponte* and without affording the parties the opportunity to address [the merits of the Rule 19 analysis].”).

## CONCLUSION

For the foregoing reasons and as stated in Appellants’ Original Brief, Plaintiffs respectfully request that this Court enter an order reversing the District Court’s December 16, 2021 Order and Reasons, and remand for further proceedings consistent with the relief sought herein.

Respectfully submitted,

*/s/ L. Etienne Balart*

L. ETIENNE BALART (La. Bar No. 24951)
TAYLOR K. WIMBERLY (La. Bar #38942)
JONES WALKER LLP
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: 504-582-8584
Facsimile: 504-589-8584
Email: ebalart@joneswalker.com
twimberly@joneswalker.com

ATTORNEYS FOR APPELLANTS

**CERTIFICATE OF SERVICE AND COMPLIANCE WITH ECF FILING STANDARDS**

I hereby certify that on July 8, 2022 a copy of the foregoing Reply Brief on Behalf of Appellants was filed electronically with the Fifth Circuit Court of Appeals using the electronic filing system. Notice of this filing will be sent to counsel of record either by operation of the Court's electronic filing system and/or via United States Mail to all counsel of record.

*/s/ L. Etienne Balart*
L. ETIENNE BALART (La. Bar #24951)
ATTORNEY FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE WITH RULE 32(G)(1)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   This brief contains 2293 brief | 174 footnotes totaling 2467 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). In total, the Reply Brief on Behalf of Appellants Responding to Original Brief on Behalf of Walaa Cooperative Insurance Company and the Reply Brief on Behalf of Appellants Responding to Original Brief on Behalf of Marsh & McLennan Companies, Inc. and Marsh USA Inc. comply with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because they contain 4521 brief | 1267 footnotes totaling 5788 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 software in Times New Roman 14-point in the main text and Times New Roman 12-point font in the footnotes.

SO CERTIFIED, this 8th day of July, 2022.

*/s/ L. Etienne Balart*
L. ETIENNE BALART (La. Bar #24951)
ATTORNEY FOR APPELLANTS